UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                          Case No. 09-20215

Jose Castro-Ramirez,                      Honorable Sean F. Cox

    Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR CONTINUANCE

This matter is currently before the Court on Defendant's "Motion for Continuance of Trial Pending A Competency Evaluation," filed on March 5, 2010. In that motion, Defendant asks this Court to grant an unspecified continuance based on medical dangerousness. Defendant claims that the mental stress of thinking about testifying at trial is causing him to have chest pains and that he fears he may have a heart attack if he testifies. Although Defendant failed to support his motion with *any medical evidence* indicating that testifying could adversely impact his health, on March 5, 2010, this Court arranged for Defendant's own cardiologist to examine Defendant on March 5, 2010, and prepare a report for the Court. After examining Defendant and reviewing his medical records, Defendant's *own cardiologist opined that Defendant's condition is stable and that testifying at trial will not pose a significant risk to Defendant's health*. As set forth below, the Court concludes that Defendant's request for a continuance based on alleged medical dangerousness is not supported by any medical evidence and is not supported by

1

Defendant's own actions (and inactions). The Court shall therefore DENY the motion.

BACKGROUND

Defendant is a 62 year-old physician. Defendant was indicted in this action on June 24, 2009, and charged with conspiracy to commit health care fraud and health care fraud, in violation of 18 U.S.C. § 1347 and § 1349.

Defendant was released on bond, with several conditions, including that his travel would be restricted to within the state of Michigan. At Defendant's request, however, those bond conditions were later modified, to allow Defendant to travel to Puerto Rico. Defendant represented that he goes to Puerto Rico approximately every six weeks to visit and care for his ailing mother. (Docket Entry No. 135 at 4).

Defendant, and his retained counsel, Allen Wolf, have appeared before this Court for numerous pretrial hearings and conferences.

This Court held the final pretrial conference in this action on January 13, 2010. Defense Counsel did not raise any concerns regarding Defendant's physical or mental health or with proceeding with trial in February, 2010.

Trial began on February 17, 2010. This Court has been conducting trial from 8:30 a.m. to 1:00 p.m. each day. Defendant has been present at all times.

On February 25, 2010, Defense Counsel advised the Court that Defendant was having chest pains. Defense Counsel advised the Court that Defendant had not taken his prescribed medication (Lasix) that morning. The Court excused the jury, assessed the situation, and ultimately adjourned court for the day so that Defendant could obtain his medication and seek medical attention.

Thereafter, Defendant's treating physician at Harper Hospital, board-certified cardiologist Delair Gardi, M.D., advised Defense Counsel that Defendant could resume trial on Tuesday, March 2, 2010, stating that Defendant should "take his medications and he should be okay." (*See* 3/4/10 Tr. at 8). Defense Counsel relayed this information to the Court.

Trial resumed on March 2, 2010. The Government continued to present its proofs on March 2nd and 3rd. At all times on March 2nd and 3rd, Defendant was present in Court, was alert and oriented, did not appear to be in any mental or physical distress, and conferred with Defense Counsel before, during, and after trial. At no time during March 2nd or 3rd did Defense Counsel communicate to the Court any concerns relating to Defendant's physical or mental health.

Events Occurring On Thursday, March 4, 2010:

On March 4, 2010, the Government concluded its proofs. On the morning of March 4, 2010, after approximately two weeks of trial, Defense Counsel indicated to the Court – for the first time ever – that Defendant may file a motion seeking an unspecified continuance due to Defendant's health. This Court advised Defense Counsel that he must file a written motion if he was going to seek a continuance.

The only medical records that Defense Counsel presented to the Court on March 4, 2010, were records from Defendant's recent visit to Harper Hospital. Those records reflect that: 1) Defendant was admitted on February 25, 2010; 2) several tests, including an echocardiogram, left heart catheterization, CT angio of the head, and carotid doppler were performed; 3) those test results confirm that Defendant has coronary artery disease but show no acute problems; and 4) Defendant was discharged on February 27, 2010, "in a stable condition." (Ex. A to Opinion & Order, filed Under Seal). As soon as the issue was raised, this Court candidly advised Defense

Counsel that Defendant would need to provide a statement from a competent physician before it would consider a continuance. (3/4/10 Tr.).

Following this colloquy with counsel, the jury was brought out and Defendant presented two witnesses. After the conclusion of Defendant's second witness, at approximately 12:35 p.m., Defense Counsel stated to the Court, during a sidebar conference, that he intended to call Defendant as his next witness. Defense Counsel asserted, however, that Defendant had advised him that he was not able to testify at that time. As Defense Counsel was addressing the Court, Defendant put an oxygen mask on his face, for the first time since this action commenced in June, 2009. Defense Counsel asserted that the mental stress of testifying is causing Defendant to have chest pains. Defense Counsel stated that Defendant is worried that "physical pain will prevent him from being able to testify" and that he fears "that it might also go into possible heart attack" if he testifies. (3/4/10 Tr.). Defense Counsel represented to the Court that Defendant has advised that "even thinking about testimony causes him chest pain" (*Id.*).

The Court then inquired whether any of Defendant's treating physicians had advised Defendant that he should not testify and Defense Counsel responded "no," after conferring with Defendant. The Court stressed that Defendant had not provided any documentation substantiating Defendant's subjective claims. The Court adjourned the trial at approximately 1:00 p.m., but again advised Defense Counsel that he would have to file a written motion for any continuance. The Court urged counsel to review the authority provided by the Court earlier that day (*United States v. Brown*, 821 F.2d 986, 988 (4th Cir. 1987); *United States v. Zannino*, 895 F.2d 1, 13 (1st Cir. 1990); and *United States v. Jones*, 876 F.Supp. 395 (N.D. New York 1995)) and again advised Counsel that any motion must be supported with appropriate medical

4

evidence.

Although Defendant claimed to be in physical distress and had been wearing an oxygen mask when court was adjourned on March 4, Defendant did not seek medical attention, or attempt to contact any healthcare provider, after Court was adjourned. Rather, after court was adjourned, Defendant removed the oxygen mask and remained in the courtroom working with his counsel. After leaving the courtroom, Defendant then worked with his counsel in an attorney conference room in the courthouse for approximately an hour. (*See* 3/5/10 Tr.). After leaving the courthouse, Defendant then visited his wife at work and "ran errands." Defendant claims that at 4:45 p.m., and 5:40 p.m., he called Dr. Gardi at (248) 767-2953 and left messages asking him to call him back.

Events Occurring on Friday, March 5, 2010:

Trial was scheduled to resume at 8:30 a.m. on March 5, 2010. At 8:00 a.m., Defendant filed a "Motion for a Continuance of Trial Pending A Competency Evaluation." (Docket Entry No. 265). Defendant did not attach any medical evidence, such as an affidavit, letter, or report from a physician, to the motion.

On the morning of March 5, 2010, this Court discussed the events surrounding the motion with Counsel on the record. The Court confirmed the following with Defense Counsel: 1) no physician has advised Defendant that testifying could adversely impact his health; 2) Dr. Gardi did not tell Defendant that he should not testify at trial or attend trial; 3) Defendant *has not asked* any physician, including Dr. Gardi, to evaluate Defendant to determine if he is healthy enough to testify at trial; 4) Defense Counsel did not attempt to contact Dr. Gardi after court was adjourned on March 4, 2010; 5) Defendant claims he called Dr. Gardi at 4:50 p.m. and 5:40 p.m. on March

5

4, 2010, and that he was scheduled to see Dr. Gardi on March 5, 2010; 6) Defendant has been able to assist with his defense throughout trial, and continues to assist with his defense; and 7) Defendant has not seen, or been evaluated by, any mental health professional.

In sum, Defense Counsel asserted that Defendant is mentally and physically able to attend trial, and assist with his defense, and do other things such as errands, but cannot testify because of the stress that would entail. Defendant requested an unspecified continuance so that he could be evaluated by Dr. Gardi.

Although Defendant had not supported his motion with *any medical evidence* supporting his assertion that he could not testify without undue medical risk, out of an abundance of caution, this Court offered to contact Dr. Gardi to determine if Dr. Gardi could evaluate Defendant and provide a written report to the Court. Both Defendant and the Government agreed to that procedure.

The Court then provided Dr. Gardi with a letter, asking him to address specific questions in his written report to the Court, and spoke to Dr. Gardi via a conference call made on the record. Dr. Gardi stated that he had received the letter, understood the questions being asked of him by the Court, and would adjust his schedule to evaluate Defendant at 2:00 p.m. on March 5, 2010.

Dr. Gardi's Written Report To The Court:

Dr. Gardi examined Defendant on March 5, 2010, and prepared a written report for this Court. (Ex. B to Opinion & Order, filed under seal). In his report Dr. Gardi indicated that, contrary to Defendant's representations, Defendant *did not* contact Dr. Gardi or leave any messages for him on the evening of March 4, 2010, and Defendant *was not* scheduled to see Dr.

6

Gardi on March 5, 2010.

Dr. Gardi's report states that "*[a]fter examining [Defendant] on March 5, 2010, in my opinion testifying at trial will not pose a substantial danger to [Defendant's] health. Based on recent tests and physical exam [Defendant] is stable to testify.*" (*Id*.) (emphasis added). Dr. Gardi further stated that, in his opinion, Defendant's health will continue to remain stable, so long as he is compliant with his medications.

ANALYSIS

I.  The Court Concludes That A Mental Competency Examination Is Not Warranted.

Defense Counsel has not requested that Defendant be evaluated by a mental health professional. Nevertheless, to the extent that Defendant's motion can be construed as requesting a mental competency examination of Defendant pursuant to 18 U.S.C. § 4241 , the Court shall deny that request.

Pursuant to 18 U.S.C.§ 4241, either a defendant or the Government may file a motion for a hearing to determine the mental competency of the defendant. 18 U.S.C. § 4241(a). "The court shall grant the motion, or shall order such a hearing on its own motion, if there is *a reasonable cause to believe* that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* (emphasis added).

Having conducted trial in this matter for more than two weeks, and having been in a position to personally observe Defendant, and his interactions with Counsel, this Court finds that there is no reason to believe that Defendant may be suffering from a mental disease or defect

would render him incompetent to stand trial. Accordingly, this Court *will not* order a mental competency evaluation of Defendant. *See United States v. Parks*, 1999 WL 1045558 (6th Cir. 1999) (There must be some minimum showing of incompetence before a hearing is necessary and it is within the trial court's discretion to determine whether reasonable cause exists.)

II.     The Court Concludes That Defendant Has Failed To Present Even A Colorable Claim Of Medical Dangerousness:

The granting or denial of a continuance is a matter within the sound discretion of the trial judge. *United States v. Brown*, 821 F.2d 986, 988 (4th Cir. 1987); *United States v. Zannino*, 895 F.2d 1, 13 (1st Cir. 1990); *Scholl v. Felmont Oil Corp.*, 327 F.2d 697 (6th Cir. 1964).

"When a colorable claim of medical dangerousness is lodged and contested, the court must carefully investigate the situation, assemble the pertinent data, and then consider not only the medical evidence but also the defendant's activities (in the courtroom and outside of it), the steps defendant is taking (or neglecting to take) to improve his health, and the measures which can feasibly be implemented to reduce medical risks." *Zannino,* 895 F.2d at 14; *Brown*, 821 F.2d at 988.

"A trial, however, will often produce anxiety on the part of those involved, not least on the defendant himself. For a denial of a continuance to constitute an abuse of discretion, the medical repercussions must be serious and out of the ordinary; the impending trial must pose a *substantial danger to a defendant's life or health*." *Brown,* 821 F.2d at 988 (Emphasis added).

As set forth below, this Court concludes that Defendant's "eleventh-hour" request for an unspecified continuance based on alleged medical dangerousness is not supported by any credible medical evidence and is not supported by Defendant's actions (and inaction).

8

The case law reflects that where a colorable claim of medical dangerousness is lodged, the Defendant seeking the continuance has provided the court with either a written report or affidavit from a physician stating that proceeding with trial would pose a substantial danger to the Defendant's life. *See e.g., Brown*, 821 F.2d at 989 (discussing reports submitted by Plaintiff and noting that some of Plaintiff's treating physicians stated that Plaintiff should not stand trial and "stated that the stress of a trial would aggravate [Plaintiff's] hypertension, diabetes, and heart disease to a dangerous extent.").

Here, however, this Court has not been presented with *any medical evidence* that even *suggests* that testifying at trial would pose a risk to Defendant's health. Defendant has had these same chronic conditions for many years. Although he had a single day on which he claims to have experienced chest pain after failing to take his prescribed medication, Defendant was taken to the hospital and was thoroughly evaluated. The medical records provided to the Court following that hospital visit indicate that Defendant was discharged in "stable condition." Indeed, Defense Counsel advised the Court that Dr. Gardi had advised that Defendant could resume trial on March 2, 2010. Even after this Court expressly advised Defense Counsel that any motion seeking a continuance would have to be supported by appropriate medical evidence, Defendant filed a motion that was not supported by any medical evidence.

Nevertheless, this Court adjourned trial on March 5, 2010, so that Defendant could be examined by his own cardiologist. After having examined Defendant and reviewed his medical records, Defendant's *own cardiologist* has rendered an opinion that Defendant's physical condition is stable and that testifying at trial will not pose a substantial risk to Defendant's health. Thus, the Court concludes that Defendant has not even raised a *colorable claim* of

9

medical dangerousness.

In addition, Defendant's own actions, and inactions, belie the assertions in his motion.

Notably, Defendant is a physician and therefore he is in an especially good position to monitor his diet and medications to avoid untoward consequences. Nevertheless, on the one day that Defendant left here complaining of chest pains, Defendant indicated that he had *not* taken his medication that morning. As to the Court's observation of Defendant during trial, other than that one day on which he complained of chest pains, Defendant has been alert and oriented at all times, has been conferring with counsel and assisting with his defense, and has not appeared to be in any mental or physical distress.

This Court candidly advised Defendant that it would not consider any request for a continuance without appropriate medical evidence. Although Defendant claimed to be in physical distress and had been wearing an oxygen mask when court was adjourned on March 4, Defendant did not seek medical attention, or attempt to contact any healthcare provider in order to obtain such documentation, after Court was adjourned. Rather, after court was adjourned, Defendant removed the oxygen mask and remained in the courtroom working with his counsel. After leaving the courtroom, Defendant then worked with his counsel in an attorney conference room in the courthouse for approximately an hour. (*See* 3/5/10 Tr.). After leaving the courthouse, Defendant then visited his wife at work and "ran errands."

Defendant claims that at 4:45 p.m., and 5:40 p.m., he called Dr. Gardi at (248) 767-2953 and left messages asking him to call him back. Dr. Gardi, however, states that he *did not* receive

10

phone calls or messages from Defendant.[1] Moreover, even if Defendant had made an attempt to contact Dr. Gardi at the times he claimed, those attempts would not be reasonable under the circumstances presented here. If Defendant truly believed that testifying at trial the following morning would pose a significant risk to his health, Defendant would have contacted Dr. Gardi as soon as court was adjourned on March 4, 2010, rather than visiting his wife or "running errands."

Moreover, conditions are already in place that would help minimize any potential risk to Defendant's health. Trial in this action has already been proceeding for only half-days. In addition, the Court has been taking regular breaks during trial and will continue to do so. Defendant also has oxygen with him and Dr. Gardi indicates that any chest pains experienced by Defendant while testifying could be relieved, at least temporarily, by ingestion of nitroglycerin. (Ex. B to Opinion & Order at ¶ 2(d)).

## CONCLUSION & ORDER

For the reasons set forth above, the Court hereby DENIES Defendant's "Motion for Continuance of Trial Pending A Competency Evaluation," and shall proceed with trial.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 8, 2010

---

[1] Dr. Gardi also indicated that, contrary to Defendant's representations, prior to being contacted by the Court on March 5, 2010, Defendant was *not* scheduled to see Dr. Gardi on March 5, 2010. (Ex. B to Opinion & Order at ¶ 1(a)).