UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-2 JOSE CASTRO-RAMIREZ,

        Defendant.
_____/

Case No. 09-20215

HONORABLE SEAN F. COX
United States District Judge

## OPINION & ORDER DENYING THE DEFENDANT'S ORAL MOTION FOR JUDGMENT OF ACQUITTAL

Dr. Jose Castro-Ramirez is charged with one count of conspiracy to commit health care fraud, eleven individual counts of health care fraud, and one count of conspiracy to commit money laundering. [*See* Doc. No. 4]. Jury trial in this matter began on February 16, 2010. The case is before the Court on the Defendant's oral motion for judgment of acquittal, in which the Defendant argues that the Government's evidence is insufficient to convict Dr. Castro-Ramirez of the charges against him. For the reasons that follow, the Court **DENIES** the Defendant's motion.

### BACKGROUND

On June 24, 2009, the grand jury returned an indictment charging Dr. Castro-Ramirez with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, eleven individual counts of health care fraud, in violation of 18 U.S.C. § 1347, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). [*See* June 24, 2009 Indictment, Doc. No. 4].

1

On February 18, 2010, and again on February 22, 2010, the jury heard testimony from one of Dr. Castro-Ramirez' admitted co-conspirators, Mr. Shuresh Chand. Mr. Chand testified about the structure of the alleged health care fraud and money laundering conspiracies in which Dr. Casto-Ramirez was alleged to have participated, and also testified regarding the eleven individual health care fraud counts Dr. Castro-Ramirez is charged with. Consistent with FED. R. CRIM. P. 29(a), the following is a summary of Mr. Chand's testimony, viewed in the light most favorable to the prosecution.

Mr. Chand was a licensed physical and occupational therapist, and the owner of Continental Rehab Services, Inc. ("CRS"), a Michigan corporation that provided physical and occupational therapy to patients. Like other legitimate physical and occupational rehabilitation clinics, CRS would receive a patient referral from a doctor, provide physical or occupational therapy for the patient, and then bill Medicare or another health care provider for services rendered. Mr. Chand, thru CRS, had a legitimate business relationship with Dr. Castro-Ramirez for some time before the alleged health care fraud conspiracy began, with Dr. Castro-Ramirez referring patients to CRS for physical or occupational therapy.

Beginning in 2003, however, Mr. Chand alleges that CRS stopped performing legitimate services due to decreasing profitability. Coupled with two other physical and occupational clinics - Managed Care Physical Therapy and Rehabilitation Services, P.C. ("MCPT"), owned by Mr. Muhammad Azeem ("Azeem"), and S.U.B. Rehabilitation & Physical Therapy Center, Inc. ("SUB"), owned by Mr. Shafiulla Hanif ("Hanif") - Mr. Chand, Mr. Azeem, and Mr. Hanif conspired to defraud Medicare by creating fake patient treatment files and billing Medicare for medically unnecessary and/or unprovided services.

2

Mr. Chand testified that successfully defrauding Medicare required a three-tiered conspiracy: Medicare patients were needed to provide their Medicare numbers and to sign documents, a doctor needed to sign documentation referring the patients to physical therapy clinics and to attest to the medical necessity of such treatment, and the clinics needed to sign documentation claiming that physical or occupational therapy was performed, and then bill Medicare for those services. Mr. Chand alleges that CRS, MCPT, and SUB were the clinics involved in the conspiracy. Mr. Chand, Mr. Azim or Mr. Hanif would recruit Medicare beneficiaries to be involved in the scheme. Dr. Castro-Ramirez was the doctor providing the referrals.

Mr. Chand testified that a typical transaction would work as follows. Mr. Chand would recruit a Medicare beneficiary to participate in the conspiracy. The patient would then come to Mr. Chand's offices at CRS, where Mr. Chand would have a host of forms ready for the patient to sign - sign-in sheets attesting to days of physical or occupational therapy performed, initial doctor's visit forms, and Medicare reimbursement forms attesting that services were actually rendered for the patient, to name but a few. In exchange, the patient would receive a nominal amount of money, and would provide Mr. Chand with a list of prescription drugs - Vicodin, Xanex, and Soma, for example - with resale value on the street that the patient wanted. Mr. Chand would then fax these lists of requested prescription drugs to Dr. Castro-Ramirez. Often without ever having met the patients, Dr. Castro-Ramirez would then write the requested prescriptions, and return the scripts to Mr. Chand, who would then give them to the patients.

With these forms signed by the patient, Mr. Chand's associates at CRS could then reverse-engineer entire files for that patient - both medical files for Dr. Castro-Ramirez as well

as physical and/or occupational therapy files for the clinics. Mr. Chand testified that his office computers at CRS had six medical history "templates" that CRS employees could use to fill out detailed therapy evaluations for the patients to make it appear that actual therapy services had been provided.

Completed physical and/or occupational therapy files still needed signatures from licensed therapy providers before they could be submitted to Medicare for reimbursement. Mr. Chand would have licensed therapy providers sit in a room and sign the necessary forms - such as the evaluation forms with the template-created patient histories, for example - in each therapy file. These therapists would often sign between fifty and a hundred such therapy files in a sitting, and Mr. Chand would pay the therapists between one hundred and one hundred and twenty dollars per file.

At that point, all Mr. Chand needed to complete the fraudulent files were signatures by a doctor on an initial evaluation, which referred the patient to one of the therapy centers, as well as Medicare forms 700 and 701 - required for Medicare reimbursement. Rather than bringing along the entire file for a patient, Mr. Chand would simply bring these three forms - the evaluation, 700 and 701 forms - to Dr. Castro-Ramirez's home, where Dr. Castro-Ramirez would sign forms in his garage for between thirty and fifty patients in a sitting - all, of course, without having first evaluated the patients and determining that physical and/or occupational therapy was medically necessary for the patients.

Mr. Chand specifically testified regarding eleven separate Medicare reimbursement files that his office produced as part of the alleged health care fraud scheme. These files - admitted as Government's Exhibits 34(j) through 34(t), each contain evaluations and Medicare 700 and 701

4

forms signed by Dr. Castro-Ramirez.[1] For each of these files, despite signing the evaluation, 700 and 701 forms within those files, Mr. Chand testified that Dr. Castro-Ramirez did not evaluate any of those patients on the dates reflected in the files. As such, Mr. Chand testified that these files did not reflect legitimate claims for reimbursement of actually-rendered services.

In exchange for his signatures on the evaluations and the Medicare 700 and 701 forms, Dr. Castro-Ramirez received two types of compensation. First, Mr. Chand provided Dr. Castro-Ramirez with "routing slips" bearing patient signatures, which Dr. Castro-Ramirez could then use to bill Medicare for home health care visits with those patients, despite such visits not actually having been performed. Second, Mr. Chand testified that he made monetary payments to Dr. Castro-Ramirez, amounting to more than $200,000.00 between 2004 to 2007. Mr. Chand paid this money to Dr. Castro-Ramirez through personal checks drawn on Mr. Chand's own bank accounts. Mr. Chand alleged that Dr. Castro-Ramirez was aware that these funds were the result of the health care fraud scheme, as Mr. Chand did not have any legitimate income source from which to pay Dr. Castro-Ramirez.

STANDARD OF REVIEW

Motions for Judgment of Acquittal are governed by Rule 29 of the Federal Rules of Criminal Procedure, which states as follows, in pertinent part:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offence for which the evidence is insufficient to sustain a conviction.

---

[1] Specifically, Exhibit 34(j) relates to services allegedly provided to Ira Dickerson; Exhibits 34(k), (l), (m), and (n) relate to services allegedly provided to Cora Bynum; Exhibit 34(o) relates to services allegedly provided to James Cherry; Exhibit 34(p) relates to services allegedly provided to Betty Coleman; Exhibits 34(q) and (r) relate to services allegedly provided to Alice Gartrell; Exhibit 34(s) relates to services allegedly provided to Lewis Scott; and Exhibit 34(t) relates to services allegedly provided to Harrison Taylor.

FED. R. CRIM. P. 29(a).  In reviewing the sufficiency of the evidence, federal courts "must view the evidence in the light most favorable to the prosecution."  *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008).  A judgment of acquittal is only appropriate where no rational trier of fact could conclude from the evidence presented by the government that each element of the offense was proved beyond a reasonable doubt.  *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990).

## ANALYSIS

Dr. Castro-Ramirez moves this court for a judgment of acquittal, arguing that the Government's evidence is insufficient to sustain the charges against him for health care fraud, conspiracy to commit health care fraud, and conspiracy to commit money laundering.  The Court disagrees, and therefore **DENIES** Dr. Castro-Ramirez' oral motion for judgment of acquittal.

I. Health Care Fraud.

Dr. Castro-Ramirez argues that the Government's evidence is insufficient to sustain the eleven individual counts against him for health care fraud in violation of 18 U.S.C. § 1347.  The Court disagrees.  To obtain a conviction for health care fraud under 18 U.S.C. § 1347, the Government must prove that Dr. Castro-Ramirez:

> (1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.

*United States v. Hunt*, 521 F.3d at 645, citing *United States v. Raithata*, 385 F.3d 1013, 1021 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1136 (2005).

Additionally, one who aids and abets another in committing an offense is punishable as a

principal. 18 U.S.C. § 2. Aiding and abetting requires "(1) an act by a defendant which contributes to the execution of a crime; and (2) the intent to aid its commission." *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002). Thus, as the Sixth Circuit held in *Hunt*:

> [R]egardless of whether [the defendant] was actually the person who devised the fraudulent scheme, he is still guilty of health care fraud [if] the evidence is sufficient to support a finding that he contributed to the execution of the scheme with the intent to defraud.

*Hunt*, 521 F.2d at 645.

In this case, there is ample evidence that Dr. Castro-Ramirez committed health care fraud by causing Medicare claims to be submitted for physical and occupational therapy that was not provided or not medically necessary. Specifically, Mr. Chand testified that Dr. Castro-Ramirez signed the evaluation, as well as Medicare forms 700 and 701, in eleven separate files. Each of these files, Mr. Chand testified, correspond to a Medicare beneficiary involved in the health care fraud scheme, and that despite his signatures in the files, Dr. Castro-Ramirez did not actually evaluate those patients on the dates reflected in the files. Therefore, Mr. Chand testified, these eleven files signed by Dr. Castro-Ramirez did not reflect actual services rendered to the patients.

The facts of this case are similar to those of *United States v. Hunt*. In *Hunt*, the prosecution alleged that Hunt, a Tennessee doctor, committed health care fraud by "caus[ing] bills to be submitted to Medicare and Blue Cross/Blue Shield for patients that he had never seen and tests that had not been determined to be medically necessary." *Hunt*, 521 F.2d at 645. The Sixth Circuit affirmed the Middle District of Tennessee's sufficiency of the evidence findings:

> [A] rational jury could conclude that Hunt ordered tests with knowledge that the patients had never been examined by him or a nurse practitioner or physician's assistant working under his license. It follows that there is sufficient evidence to conclude that Hunt intentionally contributed to the commission of health care fraud *by causing claims to be submitted on the false pretenses that they had been*

7

> *determined to be medically necessary by a qualified medical professional*.

*Id*. at 646 (emphasis added). In the instant case, the Government offered evidence that Dr. Castro-Ramirez ordered physical and/or occupational therapy for patients which were not medically necessary. As in *Hunt*, on the facts of the instant case, the Government has met its burden to survive a Rule 29(a) motion for judgment of acquittal on the eleven individual counts of health care fraud. Dr. Castro-Ramirez' arguments to the contrary are without merit.

      II.  <u>Conspiracy to Commit Health Care Fraud</u>.

Dr. Castro-Ramirez argues that the Government's evidence is insufficient to sustain the charge against him for conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. The Court disagrees, as the Government has provided sufficient evidence that Dr. Castro-Ramirez and Mr. Chand at least tacitly agreed to defraud Medicare.

To obtain a conviction for conspiracy to commit health care fraud under 18 U.S.C. § 1349, the Government must prove "an agreement between two or more persons to act together in committing an offense, and an overt act in furtherance of the conspiracy." *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000). The Government need not show a formal written agreement - rather, "it is sufficient to demonstrate a tacit or mutual understanding among the parties." *Hunt*, 521 F.3d at 647, citing *United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir. 1999). "Likewise, direct evidence of the conspiracy is not necessary. It is enough to present circumstantial evidence which a reasonable person could interpret as showing participation in a common plan. . . ." *Id*. (internal citations omitted).

On similar facts, the Sixth Circuit in *Hunt* held that the government had offered evidence sufficient to survive a Rule 29(a) motion for judgment of acquittal:

> A chain of reasonable inferences leads to the rational conclusion that Hunt tacitly agreed to sign orders for patients he had never examined so that he and [his co-conspirators] could submit bills for their services to Medicare and private insurance. First, the evidence supports a finding that Hunt knew [his co-conspirators] were willing Medicare and private insurance and that the orders needed to be signed by a physician in order for those bills to be paid. . . . *It is hard to imagine what Hunt thought [his co-conspirators] were doing with the patients' Medicare cards if not billing for the tests*. . . . [I]t is rational to conclude that Hunt understood that his role was to sign the orders so that [his co-conspirators] could get paid for the tests that had not been validly ordered. Therefore, a rational trier of fact could come to the conclusion that Hunt tacitly agreed to a fraudulent scheme and then committed an overt act in furtherance of it by ordering the tests. *Hunt's membership in the conspiracy is supported by the fact that he signed the orders after the tests had been performed, and by the fact that [his co-conspirators] paid him $10 per signature*.

*Hunt*, 521 F.3d at 647 (emphasis added).

In this case there is ample evidence that Dr. Castro-Ramirez conspired to commit health care fraud by causing Medicare claims to be submitted for physical and occupational therapy that was not provided or was not medically necessary. As in *Hunt*, "it is hard to imagine" what Dr. Castro-Ramirez thought Mr. Chand was doing with patients' Medicare numbers "if not billing" for the physical and/or occupational therapy that Dr. Castro-Ramirez was ordering. Also as in *Hunt*, Dr. Castro-Ramirez "committed an overt act in furtherance of [the conspiracy] by ordering" the physical and/or occupational therapy. Finally, as in *Hunt*, Dr. Castro-Ramirez' "membership in the conspiracy is supported by the fact that he signed the orders," and by the fact that Mr. Chand compensated Dr. Castro-Ramirez for these signatures. Nothing more is required for the Government to prove a violation of 18 U.S.C. § 1349.

As in *Hunt*, on the facts of the instant case, the Government has met its burden to survive a Rule 29(a) motion for judgment of acquittal on the conspiracy to commit health care fraud count. Dr. Castro-Ramirez' arguments to the contrary are without merit.

9

III. Conspiracy to Commit Money Laundering.

Dr. Castro-Ramirez argues that the Government's evidence is insufficient to sustain the charge against him for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The Court disagrees, as the Government has provided sufficient evidence that Dr. Castro-Ramirez and Mr. Chand at least tacitly agreed to engage in a monetary transaction through a financial institution, affecting interstate and foreign commerce, in criminally derived property of value greater than $10,000.00, such property having been derived from their health care fraud conspiracy. *See* 18 U.S.C. § 1956(h).

As with the alleged health care fraud conspiracy discussed *supra*, to obtain a conviction for conspiracy to commit money laundering under 18 U.S.C. § 1956(h), the Government must prove "an agreement between two or more persons to act together in committing an offense. . . ." *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000). However, under the Supreme Court's holding in *Whitfield v. United States*, 543 U.S. 209, 2011 (2005), no overt act must be proven by the Government to sustain a conviction under § 1956(h). Rather, all the Government must prove is that the defendant "agreed with another person to violate the substantive provisions of the money-laundering statute during the period alleged in the indictment." *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006).

The relevant facts of this case are analogous to those in *United States v. Slater*, 258 Fed. Appx. 810 (6th Cir. Dec. 20, 2007). In *Slater*, the defendant was convicted of conspiracy to commit money laundering, due to his cashing of checks related to a conspiracy to defraud insurance companies. The Sixth Circuit upheld the district court's sufficiency of the evidence determination as follows:

> . . . [S]everal witnesses gave testimony at trial tending to suggest that Defendant knew that the transactions he carried out made use of funds that were proceeds of unlawful activity. [Co-conspirator] Gambrel's testimony indicated that Defendant himself would often bring in the fraudulent checks for her to cash.

*Slater*, 258 Fed. Appx. at 815.

Here, Mr. Chand testified that Dr. Castro-Ramirez was paid kickbacks for his participation in the health fraud scheme totaling roughly $200,000.00 over the course of the conspiracy. Dr. Castro-Ramirez was paid these kickbacks through personal checks, drawn on one of Mr. Chand's accounts held by a financial institution. Mr. Chand also testified that Dr. Castro-Ramirez was aware, despite the parties often including a "loan" notation on the check's memo lines, that these checks were being drawn on the fraudulent proceeds of the health care fraud conspiracy. As in *Slater*, here the Government has met its burden to survive a Rule 29(a) motion for judgment of acquittal on the conspiracy to commit money laundering count. Dr. Castro-Ramirez' arguments to the contrary are without merit.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant Dr. Castro-Ramirez' oral motion for judgment of acquittal pursuant to FED. R. CRIM. P. 29(a).

**IT IS SO ORDERED**.

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: March 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 9, 2010, by electronic and/or ordinary mail.

s/Jennifer Hernandez<br>
Case Manager